## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ANNA LOY,**

     **Plaintiff,**

                             **CASE NO.:**

**v.**

**OFFICE OF STATE COURT**
**ADMINISTRATORS – FIRST**
**JUDICIAL CIRCUIT, and**
**ROBIN M. WRIGHT, in her official**
**Capacity as Trial Court Administrator for**
**The First Judicial Circuit of Florida,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, Anna Loy, by and through undersigned counsel, and files this Complaint against the Office of State Court Administrators – First Judicial Circuit, and Robin M. Wright, in her official capacity as Trial Court Administrator for The First Judicial Circuit of Florida, and in support of her claims states as follows:

## JURISDICTION AND VENUE

1.     This is an action against the Office of State Court Administrators – First Judicial Circuit, and Robin M. Wright, in her official capacity as Trial Court Administrator for The First Judicial Circuit of Florida for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101

*et seq.*, and §504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 *et seq.* ("Rehab Act").

2.     Venue is proper in this district, because all of the events giving rise to these claims occurred in Escambia County which is in this district.

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## PARTIES

4.     Plaintiff is a resident of Wetumpka, Alabama.

5.     Defendant Robin M. Wright ("Defendant Wright") is being sued in her official capacity as the Trial Court Administrator for the First Judicial Circuit and the agency head of the Office of State Court Administrators – First Judicial Circuit for declaratory and injunctive relief.

6.     Defendant Office of State Court Administrators – First Judicial Circuit ("Defendant OSCA"), is the administrative arm of the Florida state court system.

7.     Defendant OSCA receives federal financial assistance. Defendant OSCA is responsible for the acts, omissions and claims set forth in this Lawsuit and, at all relevant times, was an employer" within the meaning of the Rehab Act and § 20-602.

## GENERAL ALLEGATIONS

8.     Plaintiff has satisfied all conditions precedent, or they have been waived.

2

9.     Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

10.     Plaintiff requests a jury trial for all issues so triable.

11.     At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the ADA.

12.     At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of the ADA.

13.     At all times material hereto, Defendant was an "employer" within the meaning of the Rehab Act and subject to its provisions on account of Defendant's receipt of federal financial assistance. Defendant OSCA is responsible for the acts, omissions and claims set forth in this complaint.

## FACTS

14.     Plaintiff began working for Defendant in June 2013 as a Court Reporter, and she worked in this capacity until September 11, 2020.

15.     During Plaintiff's employment with Defendant, Plaintiff suffered from a physical or mental condition that substantially limited her ability to perform one or more major life activities. Specifically, Plaintiff has been diagnosed with psoriatic arthritis and related conditions. Plaintiff had a record of such condition, and/or was regarded by Defendant as having a condition that substantially limited her ability to perform one or more major life activities.

3

16.     Plaintiff continues to suffer from the aforementioned physical or mental condition.

17.     At all times material hereto, Plaintiff could perform the essential functions of her job with Defendant with or without accommodation.

18.     Thus, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA.

19.     At all relevant times, Defendant had knowledge of Plaintiff's disability.

20.     Defendants had previously allowed all court reporters to work from home due to the global Coronavirus pandemic but had changed course and required court reporters to return to the courthouse for certain assigned days of the week beginning in June 2020.

21.     Defendant Wright assigned the court reporters for the days they were required to come to the courthouse.

22.     However, court hearings were still being conducted remotely in June 2020.

23.     In fact, circuit-wide, the First Judicial Circuit of Florida was conducting 50 Zoom hearings per day with an average of 500 total participants in criminal, civil, juvenile delinquency, juvenile dependency, family, and drug court.

24.    On or about May 28, 2020, Plaintiff requested a reasonable accommodation due to her disability, specifically requesting to not be assigned work at the courthouse.

25.    On or about June 3, 2020, Defendants denied Plaintiff's request for a reasonable accommodation.

26.    Furthermore, on or about June 3, 2020, Defendants threatened Plaintiff with disciplinary action if she failed to return to the courthouse on assigned days. Defendants did not offer to engage in any interactive process.

27.    On or about June 4, 2020, Defendants wrote to Plaintiff and reiterated that she was required to come into work on assigned days and that there was no accommodation for her to continue to do her job other than from the courthouse for those assigned days.

28.    In a response to Defendants on June 5, 2020, Plaintiff again reiterated her disability and treating medication made her a high risk for death or severe complications if she contracted the Coronavirus.

29.    Defendants, however, did not care that Plaintiff's disability and treating medication placed her in a high risk category for death or severe complications if she contracted the Coronavirus, and on or about June 8, 2020, Defendants responded to Plaintiff by not only scheduling her to come to the courthouse on June 16th and

18th, but also required her to be the court reporter scheduled to cover one of the very first in-person court hearings since the pandemic on the 18th of June 2020.

30.     The hearing Defendants required Plaintiff to cover at the courthouse on the 18th of June, 2020, was also being conducted using remote technology.

31.     Defendants scheduling of Plaintiff to be present at a court hearing that was also being conducted with remote technology was in retaliation for having requested a reasonable accommodation.

32.     Defendant refused to allow Plaintiff to cover the June 18, 2020, hearing remotely.

33.     Permitting Plaintiff to cover the June 18, 2020, hearing remotely would not have caused undue hardship.

34.     Defendants attempted to allege the workload demanded that a court reporter appear in-person. However, the only proceedings that require in-person stenography reporting were capital cases and circuit criminal trials. Trials had been postponed until July or longer. The rules for the use of communication equipment for conducting proceedings by remote electronic means were also suspended in June 2020.

35.     Plaintiff could have appeared and reported the hearing of June 18, 2020, remotely.

36.     Defendants also attempted to allege that other court reporters were performing work for additional administrative projects. However, Plaintiff learned there were no such additional administrative projects.

37.     Even if there were additional administrative projects, they are not essential functions of Plaintiff's job as a court reporter.

38.     On or about June 11, 2020, Defendant agreed to permit Plaintiff to only telework but with caveats, stating:

> Further, since you are requesting to telework exclusively from home, your request will be approved to the extent that there is work available that may successfully be completed by you from a remote location.

> As has been the current practice within the First Circuit, you will be assigned work by your direct supervisor on a rotating basis along with other court reporters. Your direct supervisor will email or electronically transmit your work assignments with an estimated completion time.

> Since you are in a full-time court reporter position, please be further advised that if your assigned teleworking tasks do not result in 40 hours of work for the work week, you will be placed in leave without pay status for the remaining hours unless you choose to supplement those hours with your annual leave.

39.     Thereafter, Defendant proceeded to alter Plaintiff's due dates for assignments, in contravention of the standard set times, so that she would have less time to complete them than other court reporters.

40.     On or about June 26, 2020, Plaintiff made another complaint of the Defendants treatment of her and the ongoing retaliation. In part, she complained that Defendants requirement that she take leave on days that she does not have work

7

assigned was not applicable to other court reporters that were working remotely for part of the week. Further, she predicted the retaliation would next be apparent in the Defendants assignment of work to her.

41.   On or about June 29, 2020, and in response to Plaintiff's allegations, Defendants altered all of the court reporter's telework rules such that if they did not have enough work to do, they were required to report to the courthouse or take leave.

42.   However, Defendants still controlled the assignment of work and proceeded to unevenly distribute the assignments so that Plaintiff would not have work to perform remotely and be forced to use leave or be forced into leave without pay status.

43.   After Plaintiff's accommodation request on May 29, 2020, Defendant initially assigned cases to her but then failed to assign anything else to her until a month later on June 23, 2020. Thereafter, there was another drought of assignments until another month later on July 20, 2020. Then again, another month long drought until August 26, 2020 and then nothing else until she was terminated on September 11, 2020.

44.   By creating restrictive and unnecessary caveats on its approval of Plaintiff's request, Defendant unreasonably refused to accommodate Plaintiff's disability.

8

45.     Defendant then took retaliatory actions towards Plaintiff, such as changing her due dates and failing to assign her work, and ultimately, on or about September 11, 2020, Defendant terminated Plaintiff's employment.

## COUNT I – ADA VIOLATION
### (DISABILITY DISCRIMINATION)

46.     Plaintiff realleges and readopts the allegations of paragraphs 1-6, 8-10, 12, and 14-45 of this Complaint, as though fully set forth herein.

47.     Plaintiff is a member of a protected class under the ADA.

48.     Plaintiff was subjected to disparate treatment on the basis of her disability, and/or perceived disability.

49.     Specifically, Plaintiff was harassed because of her disability and her need to take precautions from contracting the coronavirus.

50.     Defendants' actions were willful and done with malice.

51.     Plaintiff was injured due to Defendants' violations of the ADA, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

a)     A jury trial on all issues so triable;

b)     That process issue and that this Court take jurisdiction over the case;

c)     That this Court enter an injunction restraining continued violation of the ADA;

9

d) Reinstatement of Plaintiff to a position comparable to her prior position;

e) Reinstatement of Plaintiff's full fringe benefits and seniority rights;

f) Prejudgment interest on all monetary recovery obtained.

g) All costs and attorney's fees incurred in prosecuting these claims; and

h) For such further relief as this Court deems just and equitable.

## COUNT II—ADA VIOLATION
## (DENIAL OF REASONABLE ACCOMMODATION)

52. Plaintiff realleges and readopts the allegations of Paragraphs 1-6, 8-10, 12, and 14-45 of this Complaint, as though fully set forth herein.

53. Plaintiff is disabled, or was perceived by Defendants as being disabled.

54. Defendants failed to provide Plaintiff with a reasonable accommodation for her disability, and shortly thereafter terminated her employment.

55. Defendants' actions were willful and done with malice.

56. Plaintiff was injured due to Defendants' violations of the ADA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE** Plaintiff demands:

(a) A jury trial on all issues so triable;

10

(b)    That process issues and that this Court take jurisdiction over the case;

(c)    An injunction restraining continued violation of law enumerated herein;

(d)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position;

(e)    Prejudgment interest on all monetary recovery obtained;

(f)    All costs and attorney's fees incurred in prosecuting these claims; and

(g)    For such further relief as this Court deems just and equitable.

## <u>COUNT III – ADA RETALIATION</u>

57.    Plaintiff realleges and readopts the allegations of paragraphs 1-6, 8-10, 12, and 14-45 of this Complaint, as though fully set forth herein.

58.    As a qualified individual with a disability whom Defendant knew or perceived to be disabled, Plaintiff is a member of a protected class under the ADA.

59.    Plaintiff engaged in protected activity under the ADA by reporting Defendant's discrimination.

60.    Defendant retaliated against Plaintiff for engaging in protected activity under the ADA by changing her due dates, failing to assign work to her, and ultimately terminating Plaintiff's employment.

61.     Defendant's actions were willful and done with malice.

62.     The adverse employment action that Defendant took against Plaintiff was material.

63.     Plaintiff was injured due to Defendant's violations of the ADA, for which she is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a)     A jury trial on all issues so triable;

b)     That process issue and that this Court take jurisdiction over the case;

c)     That this Court enter a declaratory judgment against Defendant, stating that Defendant interfered with Plaintiff's rights under the ADA;

d)     That this Court enter an injunction restraining continued violation of the ADA;

e)     Reinstatement of Plaintiff to a position comparable to her prior position;

f)     Reinstatement of Plaintiff's full fringe benefits and seniority rights;

g)     Prejudgment interest on all monetary recovery obtained.

h)  All costs and attorney's fees incurred in prosecuting these claims; and

i)  For such further relief as this Court deems just and equitable.

## COUNT IV– REHABILITATION ACT
### (DISABILITY DISCRIMINATION)

64.  Plaintiff realleges and readopts the allegations of paragraphs 1-10, and 13-45 of this Complaint, as though fully set forth herein.

65.  At all times relevant to this Complaint, Plaintiff was an "employee" and the Defendants were an "employer" within the meaning of Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") 29 U.S.C. § 794 *et seq.*

66.  Section 504 of the Rehab Act incorporates certain provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.*, as amended, ("ADAAA") relating to employment discrimination, and expressly prohibits employers from discriminating against an otherwise qualified individual with a disability.

67.  Section 504 of the Rehab Act mandates that "[n]o otherwise qualified individual with a disability…shall, solely or by reason of her or his disability, be excluded from the participating in, be denied the benefits of, or be subjected to discrimination under any program or activity received Federal financial assistance." 29 U.S.C. § 794(a).

68.     Section 504 defines "program or activity," in relevant part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State and local government entity) to which the assistance is extended, in the case of assistance to a State or local government…" 29 U.S.C. § 794(b)(1).

69.     Section 504 of the Rehab Act is applicable to public employers who received federal financial assistance, and, upon information and belief, the Defendant receives federal grants, contracts and/or other financial assistance, thereby subjecting itself to the requirements of Section 504 of the Rehab Act.

70.     During all times specified in the Complaint that are relevant to this Lawsuit, Plaintiff was an individual who had a disability that in whole or in part substantially limited one or more of Plaintiff's major life activities, thus rendering Plaintiff a qualified individual with a disability as that term is defined by the ADA as amended by the ADAAA, and as recognized by the Rehab Act.

71.     Defendant and its agents additionally regarded and perceived Plaintiff as an individual with a disability which substantially limited one or more of her major life activities. Defendant and its agents additionally knew that Plaintiff had developed a record of having a disability while working for Defendant. Therefore,

14

Plaintiff is a qualified individual with a disability as that term is defined by the ADA, as amended by the ADAAA, and as recognized by the Rehab Act.

72.     During all times as set forth in the Complaint and continuing until her termination, the Defendant and its agents and employees: (a) have engaged in unlawful employment practices against Plaintiff on the basis of her disability; and (b) have systematically denied equal employment opportunities to Plaintiff on the basis of her disabilities; (c) have taken adverse employment actions against her on the basis of her disabilities; and (d) have subjected her to disparate treatment and related actions affecting the terms and conditions of her employment on the basis of her disabilities, and (e) have subjected her to a harassing and hostile working environment on the basis of her disabilities, all in violation of the ADA and Rehab Act.

73.     The harassment and hostile working environment to which Plaintiff was subjected was frequent and severe, and was used to degrade, demean and humiliate Plaintiff on the basis of her disability.

74.     The unwelcome harassing treatment was encouraged, allowed, made and ratified by management at Defendant's workplace, and was sufficiently severe and pervasive so as to alter the terms and conditions of employment and to create an abusive working environment.

75.     Plaintiff complained of the harassment and disparate treatment in the terms and conditions of employment to Defendant but these individuals failed to take prompt, remedial action in response to the complaints or otherwise remedy the abusive working environment.

76.     The discrimination against Plaintiff caused her to sustain and continue to sustain direct and consequential damages, including but not limited to, physical and emotional pain, mental anguish, humiliation and embarrassment, damage to professional reputation and development, loss of income and other economic benefits, justifying an award of compensatory damages. Plaintiff also experienced impairment of her future earning capacity.

77.     The actions of Defendants were done intentionally or with deliberate indifference to the protected rights of Plaintiff, entitling her to monetary damages for each and every offense.

**WHEREFORE**, Plaintiff demands judgement against Defendant and seeks the following relief:

(a) Economic damages;

(b) Compensatory non-economic damages;

(c) Prevailing party attorneys' fees, expenses, and costs;

(d) Pre and Post-Judgment interest;

(e) And such other penalties and monetary, declaratory, and equitable relief as

the nature of his causes may permit.

## COUNT V – REHAB ACT
### (RETALIATION)

78.     Plaintiff realleges and readopts the allegations of Paragraphs 1-10 and

13-45 of this Complaint, as though fully set forth herein.

79.     At all times relevant to this Complaint, Plaintiff was an "employee" and

the Defendants were an "employer" within the meaning of Section 504 of the

Rehabilitation Act of 1973 ("Rehab Act") 29 U.S.C. § 794 *et seq.*

80.     Section 504 of the Rehab Act incorporates certain provisions of the

ADA, as amended, relating to employment discrimination, and expressly prohibits

employers from discriminating against an otherwise qualified individual with a

disability.

81.     Section 504 of the Rehab Act mandates that "[n]o otherwise qualified

individual with a disability…shall, solely or by reason of her or his disability, be

excluded from the participating in, be denied the benefits of, or be subjected to

discrimination under any program or activity received Federal financial assistance."

29 U.S.C. § 794(a).

82.     Section 504 defines "program or activity," in relevant part, as "all of

the operations of a department, agency, special purpose district, or other

instrumentality of a State or a local government; or the entity of such State or local

17

government that distributes such assistance and each such department or agency (and each other State and local government entity) to which the assistance is extended, in the case of assistance to a State or local government…" 29 U.S.C. § 794(b)(1).

83.    Section 504 of the Rehab Act is applicable to public employers who received federal financial assistance, and, upon information and belief, the Defendant receives federal grants, contracts and/or other financial assistance, thereby subjecting itself to the requirements of Section 504 of the Rehab Act.

84.    During all times specified in the Complaint, Plaintiff engaged in protected activity by opposing, complaining, and raising the illegal and discriminatory practices, failure to accommodate, and hostile work environment of Defendant directly to Defendant and then further to the federal Equal Employment Opportunity Commission ("EEOC").

85.    The Defendant engaged in a pattern and practice of retaliation against Plaintiff as a direct and proximate result of engaging in protected activity, resulting in adverse employment actions in violation of the anti-retaliation provisions of the ADA, and as recognized by the Rehab Act.

86.    The retaliation against Plaintiff caused her to sustain and continue to sustain direct and consequential damages, including but not limited to, physical and emotional pain, mental anguish, humiliation and embarrassment, damage to professional reputation and development, loss of income and other economic

benefits, justifying an award of compensatory damages. Plaintiff has also experienced impairment of her future earning capacity.

87.    The actions of Defendant were done intentionally or with deliberate indifference to the protected rights of Plaintiff, entitling her to monetary damages for each and every offense.

**WHEREFORE**, Plaintiff demands judgment against Defendant and seeks the following relief:

(a) Economic damages;

(b) Compensatory non-economic damages;

(c) Prevailing party attorneys' fees, expenses, and costs;

(d) Pre and Post-judgment interest;

(e) And such other penalties and monetary, declaratory, and equitable relief as the nature of her causes may permit.

## COUNT VI – REHAB ACT
### (FAILURE TO REASONABLY ACCOMMODATE)

88.    Plaintiff realleges and readopts the allegations of Paragraphs 1-10 and 13-45 of this Complaint, as though fully set forth herein.

89.    At all times relevant to this Complaint, Plaintiff was an "employee" and the Defendants were "employers" within the meaning of Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") 29 U.S.C. § 794 *et seq.*

19

90.     Section 504 of the Rehab Act incorporates certain provisions of the ADA, as amended, relating to employment discrimination, and expressly prohibits employers from discriminating against an otherwise qualified individual with a disability.

91.     Section 504 of the Rehab Act mandates that "[n]o otherwise qualified individual with a disability…shall, solely or by reason of her or his disability, be excluded from the participating in, be denied the benefits of, or be subjected to discrimination under any program or activity received Federal financial assistance." 29 U.S.C. § 794(a).

92.     Section 504 defines "program or activity," in relevant part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State and local government entity) to which the assistance is extended, in the case of assistance to a State or local government…" 29 U.S.C. § 794(b)(1).

93.     Section 504 of the Rehab Act is applicable to public employers who received federal financial assistance, and, upon information and belief, the Defendant receives federal grants, contracts and/or other financial assistance, thereby subjecting itself to the requirements of Section 504 of the Rehab Act.

94.     During all times specified in the Complaint, Plaintiff was an individual who developed and suffered from a disability that substantially impaired one or more major life activities.

95.     Plaintiff was therefore a qualified individual with a disability as that term is defined by the ADA as amended by the ADAAA, and as recognized by the Rehab Act.

96.     Defendant and its agents additionally regarded and perceived Plaintiff as an individual with a disability which substantially limited one or more of her major life activities. Defendant and its agents additionally knew that Plaintiff had developed a record of having a disability while employed by Defendant. Plaintiff was therefore a qualified individual with a disability as that term is defined by the ADA, as amended by the ADAAA, and as recognized by the Rehab Act.

97.     Defendant and its agents were aware of Plaintiff's disabilities.

98.     Defendant, however, failed to engage in the interactive process of accommodation and failed to reasonably accommodate her disabilities.

99.     The Defendant's failures to reasonably accommodate Plaintiff caused her to sustain and continue to sustain direct and consequential damages, including but not limited to physical and emotional pain, mental anguish, humiliation and embarrassment, damage to professional reputation and development, loss of income

and other economic benefits, justifying an award of compensatory damages. Plaintiff has also experienced impairment of her future earning capacity.

100.   The actions of Defendant were done intentionally or with deliberate indifference to the protected rights of Plaintiff, entitling her to monetary damages for each and every offense.

**WHEREFORE**, Plaintiff demands judgment against Defendant and seeks the following relief:

(a) Economic damages;

(b) Compensatory non0economic damages;

(c) Prevailing party attorneys' fees, expenses, and costs;

(d) Pre and Post-Judgment interest.

(e) And such other penalties and monetary, declaratory and equitable relief as the nature of her causes may permit.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable. Dated this 27th day of May, 2021.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992

22

**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
Email: aketelsen@wfclaw.com
**Attorneys for Plaintiff**